JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant David A. Quandt appeals from a common pleas court order sentencing him to five years imprisonment, the maximum term allowable for a third degree felony, and ordering him to pay restitution in the amount of $991,932.02. He argues:
 {¶ 2} "[I.] THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO A TERM OF IMPRISONMENT FOR MORE THAN THE MINIMUM SENTENCE.
 {¶ 3} "[II.] THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT, A FIRST TIME OFFENDER, TO THE MAXIMUM TERM OF IMPRISONMENT.
 {¶ 4} "[III.] THE TRIAL COURT IMPROPERLY ORDERED RESTITUTION FOR AN AMOUNT OF MONEY ALREADY DEALT WITH IN A CIVIL SUIT." [Emphasis in original.]
 {¶ 5} We find no error in the term of imprisonment imposed by the common pleas court and affirm its decision in that respect. However, the court had no statutory authority to require appellant to pay restitution. Therefore, we are constrained to reverse that portion of the judgment.
 PROCEDURAL HISTORY {¶ 6} Appellant was charged with two counts of theft by deception of property or services valued at $100,000 or more. One of these charges concerned thefts that occurred from September 1, 1983 to June 30, 1996; the other concerned thefts from July 1, 1996 to November 1, 1999.
 {¶ 7} The second count of the indictment was amended to include thefts occurring from January 1, 1990 to November 1, 1999. Appellant plead guilty to the amended charge; the other charge was dismissed. On March 31, 2000, the common pleas court entered judgment against appellant, sentencing him to a term of five years imprisonment and ordering him to pay restitution of $2,138,224.39.
 {¶ 8} On appeal, this court reversed and remanded for resentencing, holding that the common pleas court had not made the findings necessary to impose a sentence greater than the statutory minimum term of imprisonment, nor had it made the findings necessary to impose the longest available prison term. This court also found appellant's argument in opposition to the common pleas court's order of restitution was moot, and suggested that appellant present this argument to the common pleas court at the time of resentencing. State v. Quandt
(May 21, 2001), Cuyahoga App. No. 77943.
 {¶ 9} The common pleas court held another sentencing hearing on August 15, 2001. The state offered into evidence the testimony the court had heard at the first sentencing hearing. In addition, the parties each presented testimony concerning the losses suffered by the victims of the theft. The court then made the following findings on the record:
 {¶ 10} "So, the parties having had an opportunity to offer what they're going to offer from the State of Ohio and the defense, at this time, the Court will now make its findings. And the Court, again, states for the record, Court has carefully considered and analyzed the presentence investigation, the letters from the various parties and interested persons, the plea itself and all the surrounding circumstances including the Defendant's resentencing memorandum and the exhibits offered here today which included the testimony of the various victims from the firm of Quandt, Giffels Buck, who testified live at the last hearing.
 {¶ 11} "And, the Court believes it was appropriate and the right thing not to put them through that again, having personally observed their emotions at the last hearing.
 {¶ 12} "The Court will state the following is the basis and reasons for the Court's ruling and findings under Senate Bill 2 in this particular matter.
 {¶ 13} "* * * *
 {¶ 14} "The Court has taken into consideration here the serious economic harm that was inflicted upon the victims in this case over a period of a considerable number of years. And, whether that economic harm of thievery by the Defendant in this case amounted to the $2,138,224, which is the position of the State or the $991,932.02, which is the position of the expert for the defense in this case, either one of those figures, as far as this Court is concerned, represents serious economic harm to the victims in this case. And, they certainly have outlined their position on that issue at the prior hearing which is incorporated herein.
 {¶ 15} "The Court is also fully aware that the Defendant in this case held a position of trust and that he violated that position of trust as he was the managing person in control of the payroll pension funds and the person responsible for writing checks, paying the lawful and authorized debts of the firm and that he had held that position for a considerable period of time, even before the dates of this particular count of the indictment which goes back to 1990 and goes through November the 1st of 1999.
 {¶ 16} "The Defendant's professional occupation was used to facilitate the offense in this case.* * * *
 {¶ 17} "The Defendant's relationship with the victims helped facilitate the theft. In the letters that I've received and the testimony that was given, each and every one of the victims in this case described how they trusted the Defendant and how they thought of him as a friend and how he represented himself as their friend and as a person that they could trust in the position that he held at the firm.
 {¶ 18} "* * * [T]he Court is taking into consideration that, as has been graphically testified to by the experts here today, that this thievery occurred over a long period of time. It was occurring repeatedly on a month to month basis over a period of years and thus the accumulation of these very, very substantial amounts of money, illegally, by the Defendant.
 {¶ 19} "The court is of the opinion, having reviewed everything that I reviewed here, that the only thing that stopped the thievery was the fact that he was caught. And though somewhat tardy in catching him, in accounting for the long period of time that he used his professional trust and occupation as the opportunity to steal money from the very people that trusted him, including the bizarre factual situation that his own father gave him the job in the firm, his own father for a period of time was the managing partner of the firm, in essence, we have the son stealing not only from the other victims in the firm, but from his own father.
 {¶ 20} "The Court finds that to be particularly, one, astounding and two, disgusting. The Court believes that the shortest prison term would demean the seriousness of this Defendant's conduct and would not adequately protect the public from future crimes by him. A thief for this many years over such an extended period of time, this Defendant bears a good chance, certainly of repeating this type of thievery if given the opportunity.
 {¶ 21} "The Court further specifically finds that the Defendant committed the worst form of the offense. The Court, the basis of that, first of all, it goes beyond my comprehension that you would steal from your own father, from your friends and that the economic harm inflicted upon these particular victims was so enormous that the Court believes this is the worst type of offense within this category of crimes, that I could conceive of, that is, stealing from your friends and your own father, the chief officer of the firm who gave him the opportunity to serve in that fiduciary capacity at the firm.
 {¶ 22} "The Court, having made these findings, further finds that, one, the prison term is consistent with protecting the public from future crime and punishing the Defendant. Two, the Defendant is not amenable to community control sanctions.
 {¶ 23} "Further, that the shortest term would demean the seriousness of the Defendant's conduct and the shortest term would not adequately protect the public from the Defendant. Court further believes that a maximum term here is appropriate; that the Defendant committed the worst form of the offense as I have stated and outlined and that the Defendant does pose the greatest likelihood of committing future crimes."
 {¶ 24} The court then sentenced appellant to five years' imprisonment and ordered him to pay restitution of $991,932.02.
 LAW AND ANALYSIS {¶ 25} Appellant first argues that the record does not support the conclusion that a one year period of imprisonment, the statutory minimum term, would not adequately protect the public from future crimes. He claims he is not likely to commit future crimes because he has no history of criminal conduct, and it is unlikely that he will be employed in a position which would allow him to commit this offense again.
 {¶ 26} R.C. 2929.14(B) provides that:
 {¶ 27} "* * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison terms will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 28} The findings the court must make in order to impose a prison term in excess of the statutory minimum are stated in the disjunctive. The court must find either that the shortest prison term will demean the seriousness of the offender's conduct or that it will not protect the public from future crime by the defendant or others. Therefore, even if we were to agree that the appellant is not likely to commit future crimes (a conclusion we do not reach), that finding would not affect the trial court's unchallenged finding that a minimum term of imprisonment would demean the seriousness of the offender's conduct. This conclusion alone supports the trial court's imposition of a sentence greater than the statutory minimum term. Therefore, we overrule the first assignment of error.
 {¶ 29} Second, appellant argues the common pleas court erred by sentencing him to five years' imprisonment, the maximum term for this offense. Under R.C. 2929.14(C), "* * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." The court must "make a finding that gives its reasons" for imposing the maximum prison term. R.C. 2929.19(B)(2)(d).
 {¶ 30} Appellant urges that the court's determination that he committed the worst form of the offense was "purely arbitrarily made." We disagree. The court explicitly stated the reasons underlying its decision: that appellant abused a position of trust, that the offense was not a single act but took place over many years, that he stole from family and friends, including his own father, and that he caused serious financial harm to many people. We agree that these factors demonstrate that appellant committed one of the worst forms of the offense of theft. Therefore, we overrule the second assignment of error.
 {¶ 31} Finally, appellant argues the court erred by ordering him to pay restitution. Despite the wording of the assignment of error listed at the front of appellant's brief, the text of appellant's argument asserts that restitution was not an available sanction under the law in effect at the time the offense was committed. Appellant brought this issue to the common pleas court's attention in his resentencing memorandum.
 {¶ 32} At issue here is the applicability of statutory amendments included in Am.Sub.S.B. No. 2, which by its terms is applicable to offenses committed on or after July 1, 1996. Before S.B. No. 2, R.C.2929.11(E) provided that the court could order "a person who is convicted of or pleads guilty to a felony to make restitution for all or part of * * * the value of the property that is the subject of any theft offense." However, when S.B. No. 2 became effective, restitution was no longer an available penalty for a theft offense. As amended by S.B. 2, R.C.2929.18(A)(1) provided that the sentencing court could order "[r]estitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss." "Economic loss" was defined as "any economic detriment suffered by a victim as a result of criminally injurious conduct." R.C. 2929.01(N). "Criminally injurious conduct" was, in turn, defined as "any conduct of the type that is described in division (C)(1) or (2) of section 2743.51
* * * of the Revised Code and that occurs on or after July 1, 1996 * * *." R.C. 2929.01(G). Finally, R.C. 2743.51(C)(1) and (2) limited the definition of criminally injurious conduct to conduct that "poses a substantial threat of personal injury or death." Thus, under the law at the time the offense in this case was completed, restitution "[was] a statutorily valid sanction only to compensate victims for crimes that pose the threat of personal injury or death." State v. Hooks (2000),135 Ohio App.3d 746, 750; State v. Ward (1999), 135 Ohio App.3d 76, 81. Theft is not such an offense.
 {¶ 33} This defendant was originally indicted on two separate charges, one for thefts occurring before the effective date of S.B. No. 2 and one for thefts occurring thereafter. However, he plead guilty to an amended charge which incorporated criminal activity occurring both before and after S.B. No. 2 became effective. This offense was a second degree felony under the law in effect before S.B. No. 2, so the common pleas court clearly viewed the offense as being subject to S.B. No. 2 when it noted the offense was a third degree felony in its entry accepting the guilty plea and in its sentencing order. On appeal, this court also applied S.B. No. 2 when it found the common pleas court did not make the findings necessary to impose the maximum term of imprisonment or a sentence in excess of the minimum term. We are, therefore, constrained to apply S.B. 2's provisions concerning restitution as well.
 {¶ 34} The legislature corrected the limitation of the court's power to order restitution by amending the definition of "economic loss" to remove the "criminally injurious conduct" language. Am.Sub.S.B. No. 7, effective March 23, 2000. However, because this amendment became effective after the offense was completed, and because it would increase the penalty applicable to the offense, we cannot apply it in this case. Therefore, we must reverse the order of restitution.
Affirmed in part, reversed in part.
This cause is reversed to the extent the common pleas court ordered appellant to pay restitution. The judgment is affirmed in all other respects.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, PRESIDING JUDGE and JAMES D. SWEENEY, J. concur.
MICHAEL J. CORRIGAN, J. CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE CONCURRING AND DISSENTING OPINION).
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).